UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW J. DAVISON, | ) | Case No. 1:24-cv-01076 |
| Plaintiff, | ) ) | Judge J. Philip Calabrese |
| v. | ) ) | Magistrate Judge |
| CITY OF LORAIN, *et al.*, | ) ) | Reuben J. Sheperd |
| Defendants. | ) ) ) ) | |

## OPINION AND ORDER

Plaintiff Andrew Davison filed this case, without a lawyer, against the City of Lorain, Lorain County, the City of Elyria, CLERAC, LLC, and Lakeview Complex LLC alleging various violations of his civil rights based on his prosecution in State court. Defendants move to dismiss.

### BACKGROUND

Mr. Davison's Complaint arises out of two separate, unrelated incidents. The first incident involves his 2022 arrest in the City of Lorain and prosecution on drug charges. In January 2024, those charges were dismissed for speedy trial violations. The second incident occurred in June 2024 in the City of Elyria and resulted in charges against Mr. Davison for aggravated robbery and felonious assault in the Lorain County Court of Common Pleas and for criminal damaging or endangering in the Elyria Municipal Court.

On Defendants' motions to dismiss, the Court takes Mr. Davison's allegations as true and construes them in his favor. Additionally, the Court considers the 44 exhibits that Mr. Davison attached to his complaint. They include public records of State court proceedings and some personal documents. (*See generally* ECF No. 4); *Bassett v. National College Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### A. City of Lorain Incident (2022)

Plaintiff's allegations center on Mr. Davison's encounters with the City of Lorain Police Department and various other city, county, and municipal employees.

#### A.1. The Investigation

In September 2022, Lorain police detectives met with a confidential informant (who indicated to them that he could purchase crack cocaine from a male the informant knew as "Mall." (ECF No. 4-9, PageID #109.) The confidential informant indicated that Mall lived in the Lakeview Apartments in the City of Lorain and drove a black Chrysler 4-door sedan and a black GMC SUV. (*Id.*) Detectives suspected that Mall was Mr. Davison, also known as Malley, because they had received information from other sources indicating that Mr. Davison had been selling drugs, lived in the Lakeview Apartments, and had two vehicles registered to him, one of which was a 2015 black GMC Yukon SUV. (*Id.*) Further, they determined that Mr. Davison had a criminal history involving possession of cocaine, heroin, and drug paraphernalia, as well as being a felon in possession of a firearm and assault. (*Id.*, PageID #109–10.)

In October 2022, a detective arranged for the confidential informant to make two controlled buys of cocaine from Mr. Davison. (*Id.*, PageID #111.) Then, the confidential informant met with detectives immediately after the transactions and

2

handed them a clear plastic baggie containing a white rock-like substance that tested positive for cocaine. (*Id.*)

While the confidential informant arranged the second controlled buy with Mr. Davison, additional officers were conducting surveillance on his apartment complex to account for his movements before, during, and after the buy. (*Id.*, PageID #112.) They observed Mr. Davison's car parked near the entry of the apartment building. A silver Dodge Ram was parked nearby. (*Id.*) Due to the amount of activity in the apartment complex parking lot, the detectives had to keep circling in and out of it to avoid being spotted. Mr. Davison told the confidential informant to meet him at a nearby gas station. (*Id.*) Detectives at Mr. Davison's apartment complex observed that his Chrysler sedan was still parked in its spot, but the silver Dodge Ram was missing. (*Id.*) Mr. Davison appeared in the silver Dodge Ram at the gas station. The confidential informant completed the purchase with Mr. Davison. (*Id.*, PageID #112–13.)

Detectives determined that the Dodge Ram was registered to Enterprise Rent A Car, also known as "CLERAC, LLC." (ECF No. 4-9, PageID #113.) Detectives contacted CLERAC and learned that Mr. Davison rented the silver Dodge Ram on October 13, 2022 and that it was due to be returned on October 18, 2022. (*Id.*) The CLERAC employee provided detectives with Mr. Davison's address at the Lakeview Apartments; however, his apartment number was not included on the rental application. (*Id.*)

3

On October 20, 2022, detectives contacted the management office of the Lakeview Apartments and spoke to a representative. At the detectives' request, the representative provided them with a current roster of tenants. The detectives discovered that Mr. Davison resided in Apartment J and continued surveillance on the apartment and Mr. Davison.

### A.2. The Arrest

Officers from the City of Lorain narcotics unit, assisted by the United States Marshals Violent Fugitive Task Force, attempted to arrest Mr. Davison at his apartment; however, Mr. Davison was not home. He alleges that he observed the officers through his Ring doorbell camera and activated his speaker to ask what they wanted. (ECF No. 1, PageID #4.) They did not respond to him. (*Id.*) Instead, the officers "physically and forcefully removed" Mr. Davison's Ring doorbell and placed it on a fire extinguisher in the hallway. (*Id.*) The officers indicated that they take this step for safety and tactical reasons. (*Id.*, PageID #115.) Mr. Davison heard the Lakeview Apartments property manager through the Ring doorbell ask the police to please not kick in the door. She used her spare key to unlock the door and give the officers access to Mr. Davison's apartment. (*Id.*, PageID #5.)

In the meantime, Mr. Davison called his federal probation officer, Alfred Preston, and asked Mr. Preston if there was a warrant for his arrest. (*Id.*, PageID #6.) Officer Preston responded that he had no knowledge of a warrant. (*Id.*) Mr. Davison called 911 and asked why the police were at his home. (*Id.*, PageID #7.) The operator told Mr. Davison that it was an investigation and put him in contact with Officer Rodriguez of the City of Lorain police. Officer Rodriguez asked Mr. Davison

4

to meet with him at the police station. (*Id.*) There, Officers Rodriguez and Payne informed him that they had a warrant for his arrest for drug trafficking. (*Id.*) They placed Mr. Davison under arrest, searched him, and removed money and a cellphone. Other officers transported Mr. Davison to the Lorain County jail. (*Id.*, PageID #10.)

### A.3. Prosecution

On January 4, 2023, Mr. Davison was arraigned in the Lorain Municipal Court in a case captioned *State of Ohio v. Davison*, No. 2022CRA04760 (Lorain Mun. Ct.). (*Id.*, PageID# 12.) The court set a $100,000 bond with GPS monitoring. Mr. Davison posted bond. The City of Lorain used a private GPS monitoring company that required Mr. Davison to make additional monthly payments of $320. (*Id.*, PageID #11.) Mr. Davison contacted his federal probation officer again and updated Officer Preston about his charges and bond. Also, he hired attorney Anthony Baker to represent him. The Municipal Court set his preliminary hearing for January 10, 2023.

At his preliminary hearing, Mr. Baker informed Mr. Davison that he was going to ask for a continuance because the police and prosecution had not yet given him any evidence or police reports. Mr. Davison was unwilling to continue or waive the preliminary hearing unless the GPS monitor was removed. Lorain Municipal Prosecutor Mallory Santiago told the court that Mr. Davison's federal probation officer, Officer Preston, had requested and supported the GPS monitoring. Plaintiff alleges that this statement was false because Officer Preston denied having any such conversation with Officer Rodriguez. Instead, Officer Preston indicated that, if he had wanted Mr. Davison to wear a GPS monitor, he would have placed one on him.

5

The court denied the request to modify the terms of his release, and at Mr. Davison's insistence conducted a preliminary hearing.

The issues of the GPS monitoring at Mr. Davison's expense and the State's failure to turn over evidence would continue to plague his prosecution. His case was bound over to the Lorain County Common Pleas Court in late January 2023, and he was indicted on drug charges on July 27, 2023. Mr. Baker filed another motion to reduce bond, which the court denied, and again requested discovery. Mr. Davison contends the State did not provide the reports he believed were in the file.

In August 2023, Mr. Davison fired Mr. Baker and hired Clarissa Smith as his attorney. She filed another motion for discovery and a motion to modify the terms of his bond. At a hearing in November 2023, the court agreed that the State would pay for the GPS monitoring. Just before trial on December 7, 2023, Ms. Smith filed a motion to dismiss based on speedy trial violations. On January 30, 2024, the court granted that motion.

**B.    City of Elyria Incident (June 16, 2024)**

On June 16, 2024, eleven days after the dismissal of his charges, Mr. Davison alleges that a confidential informant for the Elyria police attacked him with a barstool and many other objects, causing serious injuries. (ECF No. 1, PageID #35–36.) Mr. Davison alleges that a fight ensued between them, and he had to "use a knife to defend himself." (*Id.*, PageID #35.) While being interviewed about the incident at the Elyria police station, officers arrested Mr. Davison for aggravated robbery and felonious assault. (*Id.*, PageID #36.) Mr. Davison believes that the Lorain and Elyria

6

Police Departments were "working together to retaliate against [him] by sending [the confidential informant] to attack him." (*Id.*, PageID #35.)

Mr. Davison alleges that he was denied medical treatment before being transported to the Lorain County jail but received medical treatment once at the facility. (*Id.*, PageID #36–38.) Mr. Davison alleges that he was denied medical treatment, a phone call, and a blanket because he refused to sign certain documentation reflecting that he was aware of his charges. (*Id.*, PageID #37–38.) At his arraignment, Mr. Davison alleges that the State prosecutor lied about the altercation with the confidential informant and did not address Mr. Davison's self-defense argument. (*Id.*, PageID #39–40.) Throughout this process, Mr. Davison alleges that all the documents he was shown by the police and the prosecutor were "not official documents" and were all used "in the Sham Legal Process" because they did not contain any signatures. (*Id.*, PageID #40 & 42.)

He claims that he attempted to retain Ms. Smith to represent him, but she was involved in another trial and could not appear in court for him. The court set bond at $ 175,000.00 and scheduled a preliminary hearing for June 24, 2024. While he was waiting for his bond to post, Mr. Davison received notice of another preliminary hearing set in the Elyria Municipal Court. It appears that this preliminary hearing was related to additional charges of criminal damaging/endangering. It is not clear whether those charges relate to the felony charges arising from the incident on June 16, 2024 or are unrelated. Mr. Davison was transferred to the Elyria Municipal Court for this hearing. Bond for this charge was set at $750.00.

7

## STATEMENT OF THE CASE

A. **Prior Federal Lawsuit, No. 24-cv-227 (*Davison I*)**

On February 6, 2024, Mr. Davison filed a civil rights case under 42 U.S.C. § 1983 against the City of Lorain, City of Lorain Police Officers Rodriguez and Payne, Lorain Municipal Prosecutor Mallory Santiago, the City of Lorain Law Director, Chief Municipal Prosecutor Patrick Riley, and Lorain County Assistant Prosecutor Victor Perez. *See Davison v. City of* Lorain, No. 1:24-cv-227 (N.D. Ohio) (Barker, J.) ("*Davison I*"). He asserted twelve grounds for relief: (1) a violation of civil rights; (2) a violation of his right to due process; (3) misconduct; (4) illegal search and seizure acting as a rubber stamp for police; (5) discrimination; (6) the making of false statements; (7) denial of his grievance process right; (8) threats and harassment; (9) violation of his right to a reasonable bond; (10) wrongful imprisonment; (11) grand jury tampering; and (12) falsified report numbers. *Id.* Mr. Davison sued Riley, Santiago, Rodriguez, and Payne in their official capacities only, as employees of the City of Lorain. (*See Davison*, No. 1:24-cv-227, ECF No. 1, PageID #10.) He did not specify whether his claims against Perez were brought in his individual or official capacity. Defendants moved to dismiss.

On June 5, 2024, the Court granted the motions to dismiss, finding: (1) the claims against the City of Lorain and the individual Defendants in their official capacities were based on an impermissible theory of *respondeat superior* and failed to state a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); and (2) the claims against Perez failed to meet minimum pleading

8

standards under Rule 8 of the Federal Rules of Civil Procedure. (*See Davison*, No. 1:24-cv-227, ECF No. 11 & ECF No. 12.)

**B.     This Lawsuit**

On June 25, 2024, Plaintiff filed this civil rights action and indicated that this case may be a refiling of his prior federal lawsuit. He raises several grounds for relief under 42 U.S.C. § 1983 against the State Defendants: (1) using a sham legal process, in violation of Ohio Rev. Code § 2921.52; (2) a *Monell* claim; (3) a violation of his right to due process; (4) misconduct; (5) illegal search and seizure; (6) acting as a rubber stamp for the police; (7) discrimination; (8) making false statements; (9) denying a citizen the grievance process; (10) threats and harassment; (11) right to reasonable bond; (12) wrongful imprisonment; (13) unlawful arrest; (14) grand jury tampering; and (15) falsifying report numbers. (ECF No. 1, PageID #1.) These are largely the same claims he raised in his first complaint. Mr. Davison claims that all State employees acted in their official capacities. (*See* ECF No. 1, ¶¶ 15, 25, 26–27, 30, 34, 35, 36, 39, & 40, PageID #20–21, 28–30, 32–33, 34, 36, 41, & 42.)

Related to the 2022 investigation, Mr. Davison adds Lakeview Complex (his landlord) and CLERAC (a rental car company) as Defendants in this matter. (ECF No. 1, PageID #2.) Mr. Davison bases his claim against Lakeview Complex on the events of January 3, 2023 when Denise Nieto, an employee of Lakeview Complex, provided the police access to Mr. Davison's unit to execute an arrest warrant. (ECF No. 1, ¶¶ 1–2, PageID #4–6; *see also* ECF No. 4-9, PageID #114–15.) Mr. Davison alleges that this conduct violates his lease agreement and Sections 5321.04(A)(7)(8) and 2921.44(A)(1), (B), (E), and (F) of the Ohio Revised Code. (ECF No. 1, ¶ 8, PageID

9

#4.) As for CLERAC, Mr. Davison alleges that providing his address and phone number to detectives violates Enterprise Rent A Car's privacy agreement. (ECF No. 1, ¶ 7, PageID #3–4; ECF No. 4-10, PageID #117.)

Against all Defendants, Plaintiff seeks compensatory and punitive damages, declaratory and injunctive relief, and attorney's fees.

After Plaintiff filed the current action, the Court ordered him to show why dismissal in No. 1:24-cv-00227 does not bar this lawsuit as duplicative. (ECF No. 6, PageID #230–31.) On July 10, 2024, Plaintiff filed a brief detailing the factual and procedural background of his claims, the previous suit and its dismissal, his efforts to supplement the complaint with new facts to fulfill his pleading requirements. (ECF No. 10.) Additionally, because Mr. Davison had been unsuccessful in finding legal representation, he requests that the Court allow him to proceed in forma pauperis and appoint an attorney for him. (*Id.*, PageID #238.)

On July 16, 2024, Defendants Lakeview Complex, LLC, Lorain County, the City of Lorain moved to dismiss Plaintiff's claims for failure to state a claim. (ECF No. 13, PageID #256; ECF No. 245, PageID #248; ECF No. 18, PageID #283.)

## ANALYSIS

When deciding a motion to dismiss under Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). A complaint must "state[ ] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46

10

(6th Cir. 2016)). This standard requires the pleading to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).

The pleading, however, must offer more than mere "labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Moreover, the Court is not required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not. *See Iqbal*, 556 U.S. at 678. Rule 8 "does not unlock the doors of discovery for a Plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

**I.      Appointment of Counsel**

As an initial matter, Mr. Davison requests that the Court appoint him counsel. (ECF No. 10, PageID #238.) He explains that he is "*pro se* by force and not choice" and that he has been unsuccessful in finding free legal representation through Cuyahoga and Lorain Counties. (*Id.*, PageID #235.) Mr. Davison argues that he should not be penalized or held to the same standard as a lawyer. (*Id.*, PageID #236.)

A district court has the discretion to appoint counsel in a civil proceeding. *See Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993); 28 U.S.C. § 1915(e)(1). It

11

is not a constitutional right. Indeed, unlike a criminal case where a defendant has a constitutional right to the assistance of counsel, the Constitution does not require representation in a civil matter. Appointment of counsel is a privilege that "is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606. (citation omitted). When determining whether exceptional circumstances exist, courts generally examine "the complexity of the factual and legal issues involved" and "the plaintiff's ability to represent himself." *Id.* at 606 (cleaned up). "Courts should not appoint counsel when the claims are frivolous or when the chances of success are extremely slim." *Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (citation and quotation marks omitted).

The Court has no doubt that Mr. Davison would benefit from the assistance of a lawyer—most litigants would—and that he has exhausted all normal channels for finding representation. However, the Court discerns no exceptional circumstance warranting the appointment of counsel. Nor does it appear that counsel would make a difference in the ultimate outcome. Accordingly, the Court **DENIES** Plaintiff's request for appointment of counsel.

Relatedly, Mr. Davison raises several allegations against the Clerk's Office regarding his treatment as a *pro se* litigant. He alleges that an unnamed individual in the office had been advising someone of every step he took to give the defendants in his first case "a heads up and advantage." (ECF No. 10, PageID #236.) Mr. Davison referenced the Court's order advising the litigants that it would not take phone calls to chambers regarding substantive legal issues from either party as evidence that the

Clerk's Office was notifying chambers and the defendants of the lawsuit. (*Id.*, PageID #236–37); *see Davison*, 1:22-cv-00227 (N.D. Ohio), Order, Feb. 7, 2024. Additionally, Mr. Davison claims that the Clerk's Office "sabotage[d]" his prior complaint because they would not give him status updates on the case or provide "clarification on the motions" to dismiss pending in that matter. (ECF No. 10, PageID #237.)

Plaintiff provides no evidence to support his accusations. Based on the Court's review of the record, nothing improper or nefarious occurred regarding Plaintiff's prior suit. The court's order on February 2, 2024 was a standard order, docketed in every case, informing the parties that it would not take calls or questions about substantive legal matters. Additionally, the Court cautions Mr. Davison that he cannot seek legal advice or information about his case from the Clerk's Office. Neither the Court nor the Clerk's Office will afford Mr. Davison special treatment, including assistance in responding to dispositive motions. The Court reminds Mr. Davison that even though he is *pro se*, he must abide by the Court's rules and deadlines like any other litigant.

## II.    Res Judicata

The City of Lorain, Lorain County, and the City of Elyria assert that res judicata bars the claims against based on *Davison I*, Plaintiff's prior civil rights action in this Court. "Res judicata" is an overarching term encompassing both issue and claim preclusion. *See Hutcherson v. Lauderdale Cnty.*, 326 F.3d 747, 758 n.3 (6th Cir. 2003) (citations omitted). Application of the doctrine depends on (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was

13

litigated or should have been litigated in the prior action; and (4) that the claims arise from the same events. *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009). In short, the doctrine of res judicata bars duplicative litigation based on the same events. *Montana v. United States*, 440 U.S. 147, 153 (1979); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). Where one court has already resolved the merits of a claim or issue, another court will not revisit them. *Id.* Therefore, the doctrine of res judicata precludes a party from bringing a subsequent lawsuit on the same claim or raising a new defense to defeat the prior judgment. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990).

Because the judgment in *Davison I* was rendered in federal court, federal law determines the effect of that judgment. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Under federal law, claim preclusion generally refers to the effect of a prior judgment in barring successive litigation of the same claims litigated in the prior lawsuit, regardless of whether those claims raised the same issues that the plaintiff seeks to litigate in the new action. *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001). Claim preclusion applies where: (1) the previous lawsuit ended in a final judgment on the merits; (2) the previous lawsuit was between the same parties or their privies; and (3) the previous lawsuit involved the same claim or cause of action as the present action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Issue preclusion generally refers to the effect of a prior judgment in barring successive litigation of an issue of fact or law that was actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the

14

issue arises in the same claim or in a different claim. *New Hampshire v. Maine*, 532 U.S. at 748–49. Issue preclusion applies where: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding. *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace & Agric. Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir. 1996).

Put simply, litigants are not entitled to a second bite at the apple. Res judicata requires a plaintiff to present every ground for relief in the first action, or forever be barred from asserting it. And it precludes rearguing issues and claims that were litigated in a previous suit or should have been.

### II.A. City of Lorain and Lorain County

Claim preclusion bars Plaintiff's claims against the City of Lorain and Lorain County. *Davison I* named the City of Lorain and its officers in their official capacities. Plaintiff raised thirteen of the same claims against the City of Lorain in *Davison I* that he now asserts against the City of Lorain in this action. *Davison I* ended in a final judgment on the merits. Therefore, res judicata bars those thirteen claims against the City of Lorain.

Issue preclusion bars the other two claims that Plaintiff asserts against the City of Lorain in this action. In addition to the claims he asserted in *Davison I*, he adds claims for "sham legal process" and "*Monell*" claims. *Davison I* was dismissed, in part because Plaintiff failed to demonstrate that police officers in the City of Lorain

15

acted pursuant to a policy or custom of the City and were based solely on a theory of *respondeat superior* liability. *See Monell*, 436 U.S. at 690–91. Accordingly, *Davison I* addressed the *Monell* issue. While Lorain County is technically a new party, the *Davison I* Court construed Plaintiff's official capacity claims against Perez, an assistant county prosecutor, as *Monell* claims against his employer, Lorain County. *Davison I*, ECF No. 11, PageID #104; *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that an official sued in his or her official capacity is in privity with the government). Accordingly, the second element of res judicata is fulfilled with respect to Lorain County because it is in privity with Perez in his official capacity and the claims against it were adjudicated in the prior suit. *See Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015).

The sham legal process claim against the City of Lorain merely repackages Plaintiff's claims for unlawful arrest, wrongful imprisonment, grand jury tampering, falsifying reports, making false statements, rubber stamping of police actions, misconduct and due process addressed in *Davison I*. It is based on the same issues of fact and law as the claims litigated in *Davison I*. Res judicata bars this claim as well.

### II.B. City of Elyria

Res judicata does not bar Plaintiff's claims against the City of Elyria, which was not a party in *Davison I*. As a separate political subdivision, it is not in privity with the City of Lorain. In any event, the claims against the City of Elyria are based on an incident that occurred eleven days after dismissal of *Davison I*.

16

To the extent Plaintiff complains of conditions and treatment in the Lorain County jail in connection with his arrest in Elyria and his subsequent detention, those claims against Lorain County are not barred either. Because those claims did not arise until after the dismissal of *Davison I*, res judicata cannot bar them.

### III. Section 1983 Claims

Plaintiff fails to state a claim under 42 U.S.C. § 1983 against any Defendant.

### III.A. *Respondeat Superior*

In his complaint, Plaintiff says that he is suing the City of Lorain, Lorain County, and the City of Elyria because they employ the individuals who violated his constitutional rights. (ECF No. 1, PageID #2–4.) For purposes of Section 1983, a municipality is a "person" and can be held liable for constitutional injuries for which it is responsible. *Monell* 436 U.S. at 690–91. But a municipality is not responsible for the wrongs of those who work for it—that is the theory of *respondeat superior* liability. In other words, a political subdivision may only be liable under Section 1983 for its own wrongdoing, not the wrongdoings of its employees. *Id.* In general, this means counties, cities, and other bodies of local government may be sued under 42 U.S.C. § 1983 if they are "alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell*, 436 U.S. at 690). Plaintiff must identify the municipal policy or custom, connect the policy to the municipality, and show that he sustained his particular injuries due to execution of that custom or policy. *Morgan v. Fairfield*

*Cnty., Ohio*, 903 F.3d 553, 566 (6th Cir. 2018); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

Plaintiff does none of those things. He does not identify a custom or policy of the City of Lorain, Lorain County, or the City of Elyria that caused injury to him. Instead, he asserts in general, blanket statements that each municipality "is responsible for the policies, practices, and customs [of the municipality] . . . [and] is responsible for ensuring that all of its policies, practices, and customs are in compliance with federal and state law, department or agency policies, rule. And regulations and related standards of care." (ECF No. 1, PageID #3.) These conclusory allegations fall short of stating a claim that each of the municipalities may be liable for any constitutional violation Mr. Davison suffered.

### III.B.  Private Parties

In addition, CLERAC and Lakeview Complex are not subject to suit under 42 U.S.C. § 1983. A plaintiff may bring suit under Section 1983 only against a person acting under color of State law for deprivations of federal constitutional rights. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Generally, to be considered to have acted "under color of state law," the defendant must be a State or local government, government official, or government employee. CLERAC and Lakeview Complex are private parties, not government entities. Therefore, Plaintiff cannot maintain a claim against either under 42 U.S.C. § 1983.

### IV.  State-Law Claims

Any other claims Plaintiff asserts arise, if at all, under State law. Under 28 U.S.C. § 1367(a), district courts may exercise supplemental jurisdiction over all

other claims that are so related to those in the action within the Court's original jurisdiction that they form part of the same case or controversy. Further, Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where, as here, the district court has dismissed all claims over which it has original jurisdiction.

In deciding whether to exercise supplemental jurisdiction, the district court should consider factors such as "judicial economy, convenience, fairness, and comity." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 196 F.3d 617, 620 (6th Cir. 1999). In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). Having determined that Plaintiff's only federal cause of action must be dismissed, the Court declines jurisdiction over any remaining State-law claims. After reviewing the record in this matter and *Davison I*, the Court determines that the factors weigh in favor of declining supplemental jurisdiction. Ohio courts have equal or greater familiarity with any of these causes of action, so there are no benefits in terms of judicial economy to proceeding in federal court. And the State courts will be at least as convenient as this forum.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's request for appointment of counsel. (ECF No. 10.) The Court **GRANTS** Defendants' motions to dismiss (ECF No. 12; ECF No. 13; ECF No. 18; ECF No. 21; ECF No. 22).

**SO ORDERED.**

Dated: October 15, 2024

                                             J. Philip Calabrese
                                             United States District Judge
                                             Northern District of Ohio